IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-322 (RDA/LRV) |
| | ) |
| AMERICAN FEED INDUSTRY | ) |
| ASSOCIATION, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant American Feed Industry Association, Inc.'s Partial Motion to Dismiss for Failure to State a Claim ("Partial Motion to Dismiss"). Dkt. 6. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Partial Motion to Dismiss together with Plaintiff Robert Cooper's Amended Complaint (Dkt. 2), Defendant's Memorandum in Support (Dkt. 7), Plaintiff's Opposition (Dkt. 13), and Defendant's Reply (Dkt. 14), the Court GRANTS the Partial Motion to Dismiss for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Defendant American Feed Industry Association, Inc. ("AFIA") is a nonprofit trade association that advances the interests of companies in the feed and pet food industry. Dkt. 2 ¶ 6.

---

[1] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiff's Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Constance Cullman is the Chief Executive Officer ("CEO") of AFIA and served in that position at all times relevant to this action. *Id.* ¶ 7. On June 18, 2018, AFIA hired Plaintiff as its Executive Director. *Id.* ¶ 14. Plaintiff suffers from clinical depression and anxiety. *Id.* ¶ 5. Plaintiff asserts that, despite his disabilities, he was an excellent employee and routinely met or exceeded expectations at AFIA, as evidenced by his performance reviews. *Id.* ¶ 15.

On February 18, 2021, Plaintiff informed Cullman that he had a doctor's appointment pertaining to his disabilities and that he needed to take a couple days off to maintain his health. *Id.* ¶ 20. He decided to work through February 18th and 19th to attend his prescheduled conference calls and to take some time off starting on February 22, 2021. *Id.* Plaintiff explains that, while AFIA had been aware of Plaintiff's disabilities since 2018, this was the first time that he took medical leave to seek treatment for his disabilities. *Id.*

On February 22, 2021, Plaintiff told Cullman that he had attended a follow up appointment with his doctor. *Id.* ¶ 21. Cullman and Plaintiff agreed that he should take a couple days off. *Id.* On February 24, 2021, Plaintiff returned to work feeling better. *Id.* ¶ 23. In a meeting with Cullman that same day, Cullman informed Plaintiff that she had reassigned one of his projects to another team member. *Id.* During that meeting, she also asked Plaintiff about his interest in seeking other employment opportunities. *Id.*

During the week of March 1, 2021, Cullman met with the "Board Finance/Executive Committee" to review AFIA's budget for the next year. *Id.* ¶ 24. There was a $1 million liability on the books that was based on a contract signed by the company's former CEO, Joel Newman. *Id.* Plaintiff asserts that he was not involved in the drafting or execution of that contract. *Id.* Yet, Plaintiff claims that Cullman blamed him for the $1 million liability. *Id.* ¶ 25. Later, on March 18, 2021, Cullman asked Plaintiff if he needed a new job to be happy. *Id.* ¶ 26. Ultimately, on

March 19, 2021, Cullman terminated Plaintiff from his position at AFIA, informing him that he was "no longer a fit for the organization." *Id.* ¶ 27.

### B. Procedural Background

Prior to filing suit in this Court, Plaintiff sought resolution of his claims before the Virginia Office of Civil Rights (Virginia's Fair Employment Practices Agency, or "FEPA") and the Equal Employment Opportunity Commission (the "EEOC"). Specifically, on July 26, 2021, Plaintiff mailed a complaint alleging discriminatory firing to FEPA. Dkt. 13-1.[2] On August 1, 2021, Plaintiff cross-filed his complaint with the EEOC, Dkt. 13 at 1, and on January 25, 2023, Plaintiff received a Notice of Right to Sue from the EEOC. Dkt. 13-4.

Plaintiff subsequently filed a Complaint in this Court on March 10, 2023, naming both AFIA and Cullman as defendants. Dkt. 1. On March 20, 2023, Plaintiff filed an Amended Complaint, solely naming AFIA as a defendant. Dkt. 2. On April 14, 2023, Defendant AFIA filed the instant Partial Motion to Dismiss, Dkt. 6, along with a Memorandum in Support thereof, Dkt. 7. On April 28, 2023, Plaintiff filed an Opposition to Defendant's Motion, Dkt. 13, and on May 4, 2023, Defendant filed a Reply in support of its Motion, Dkt. 14.

### II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

[2] The complaint that Plaintiff filed with FEPA is not attached to the Complaint that he filed in this Court. Rather, it is attached as an exhibit to his Opposition. Dkt. 13-1. Nevertheless, this Court may consider it for purposes of resolving the instant Partial Motion to Dismiss because it is central to Plaintiff's claim that he exhausted administrative remedies and the parties do not dispute its authenticity. *See e.g.*, *Bowie v. Univ. of Md. Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint."). The Court can consider the rest of the exhibits attached to Plaintiff's Opposition for the same reason.

3

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

### III. ANALYSIS

In his Amended Complaint, Plaintiff brings claims for disability discrimination pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Virginia Human Rights Act (the "VHRA"), Va. Code §§ 2.2-3900 *et seq.*, against Defendant AFIA. Dkt. 2 at 6-8. Defendant now seeks dismissal of Plaintiff's VHRA claim on two separate grounds. First, it argues that Plaintiff has not satisfied the exhaustion requirement under the VHRA. Dkt. 7 at 4-5. Second, Defendant contends that the VHRA did not create a private right of action for alleged disability discrimination that occurred before July 1, 2021, and Plaintiff's claim depends on alleged acts that occurred before that date. *Id.* at 5-6.

A. Exhaustion of Administrative Remedies

As a threshold matter, this Court considers whether Plaintiff has administratively exhausted his VHRA claim. Defendant asserts that Plaintiff has not done so because he failed to obtain a notice of right to sue from FEPA, as required by Va. Code § 2.2-3907(H). Dkt. 7 at 4. Plaintiff disagrees, responding that the notice of right to sue that he received from the EEOC triggered his right to sue under the VHRA. Dkt. 13 at 1-2. In support of his argument, Plaintiff points to the Fiscal Year 2021 Work-Sharing Agreement between FEPA and the EEOC,[3] which, according to Plaintiff, permits him to exhaust both his federal and state law claims by obtaining a notice of right to sue solely from the EEOC. *Id.* at 3.

The VHRA includes an extensive administrative procedure that must be exhausted before an employee may file a lawsuit under the Act. *Jordan v. Sch. Bd. of the City of Norfolk*, 640 F. Supp. 3d 431, 448 (E.D. Va. 2022). An aggrieved individual must make a complaint with FEPA, which then prompts the agency to initiate an investigation to determine whether there is reasonable cause to believe the allegations of discrimination. Va. Code Ann. § 2.2-3907 (2022). Regardless of the investigation's outcome, a private citizen cannot sue until he has been provided with a "notice of his right to file a civil action." *Id.* § 2.2-3908(A).

Here, the record indicates that Plaintiff has received a right-to-sue notice from the EEOC, Dkt. 13-4, but not from FEPA. Critically, judges within this District and the U.S. District Court for the Western District of Virginia have recently interpreted the VHRA to require a right-to-sue notice that is separate and distinct from any EEOC notice. *See Jordan*, 640 F. Supp. 3d at 449-51

---

[3] Such a work-sharing agreement "operate[s] to avoid the EEOC's statutory requirement that the Federal agency defers its investigation while the appropriate state agency has a period of exclusive jurisdiction over the discrimination claim." *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 447-48 (E.D. Va. 2022).

(rejecting employee's argument that the EEOC right-to-sue notice served as a right-to-sue notice under the VHRA); *Moss v. Saja Rest. Grp., LLC*, No. 5:22-CV-00014, 2023 WL 3034605, at *11-12 (W.D. Va. Apr. 21, 2023) (relying on *Jordan* in concluding that plaintiff's failure to request and receive a right-to-sue notice from FEPA is fatal to his state-law claims even though he received a notice from the EEOC). Plaintiff here asks this Court to ignore this case law and hold that receipt of an EEOC right-to-sue notice provides an individual with the right to sue under state law. Dkt. 13 at 1-2. Such a conclusion, however, would run counter to the plain language of the VHRA, which requires a plaintiff to receive a right-to-sue notice from *FEPA* before filing suit in federal court. *See* Va. Code § 2.2-3908(A) ("An aggrieved person who has been provided a notice of his right to file a civil action pursuant to § 2.2-3907 may commence a timely civil action . . . ."); *id.* § 2.2-3907 (specifying that "[FEPA] shall promptly issue a notice of the right to file a civil action").

That there was a work-sharing agreement between the EEOC and FEPA in place at the time that Plaintiff filed a complaint with FEPA does not alter the analysis. A court within the Fourth Circuit has explicitly held as much, reasoning that permitting a plaintiff to sue under state law after solely receiving an EEOC right-to-sue notice "would exceed the scope of authority delegated to the federal agency in the work-sharing agreement." *Jordan*, 640 F. Supp. 3d at 449-50 (citing *Vielma v. Eureka Co.*, 218 F.3d 458, 464 (5th Cir. 2000)); *see also Moss*, 2023 WL 3034605, at *11 (relying on *Jordan* in holding that a separate right to sue notice from FEPA is required, regardless of whether a work-sharing agreement between the EEOC and FEPA is in place). This Court therefore declines to adopt Plaintiff's reasoning, in favor of persuasive authority

from sister courts. Accordingly, the Court finds that Plaintiff has not complied with the exhaustion requirements of the VHRA, and his state law claim will be dismissed on that ground.[4]

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant AFIA's Partial Motion to Dismiss (Dkt. 6) is GRANTED; Plaintiff's VHRA claim (Count II of the Amended Complaint) is DISMISSED WITHOUT PREJUDICE to permit Plaintiff to properly exhaust his VHRA claim in accordance with Virginia law.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
October 24, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[4] Because the Court concludes that dismissal of Plaintiff's VHRA claim is appropriate on this basis, it need not consider Defendant's alternative argument that Plaintiff's claim fails because the VHRA did not create a private right of action for disability discrimination that occurred before July 1, 2021.